United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY R. MALLERY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA COMMISSION ON<br>JUDICIAL PERFORMANCE,<br><br>　　　　　Defendant. | Case No.  25-cv-07715-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 12 |

Plaintiff Tony R. Mallery is a former superior court judge for Lassen County.  In May 2024, Defendant the California Commission on Judicial Performance ("CJP") removed him from judicial office.  In the case at bar, Mr. Mallery is not challenging his removal from office.  Rather, he is challenging the CJP's decision to deny him retirement disability benefits (provided under the Judges' Retirement System II, also known as "JRS II").  Mr. Mallery filed for benefits after the CJP had initiated an investigation against him but before he was removed from office.  After the CJP denied his application for benefits, Mr. Mallery challenged the decision through a petition for a writ of mandate filed with the California Supreme Court.  The California Supreme Court denied the petition in a one-line order.  Now pending before the Court is the CJP's motion to dismiss. According to the CJP, Mr. Mallery's suit is barred by the *Rooker-Feldman* doctrine as well as res judicata and collateral estoppel.  The CJP also makes an argument of Eleventh Amendment immunity.

Having considered the parties' briefs, including but not limited to the supplemental briefs ordered by the Court, the Court hereby **GRANTS** the CJP's motion.  Mr. Mallery's suit is barred by the doctrine of res judicata.

# I.    FACTUAL & PROCEDURAL BACKGROUND

A.    Complaint

In his complaint, Mr. Mallery alleges as follows.

Mr. Mallery was elected as a superior court judge in November 2012.  He began his judicial service in January 2013.  *See* Compl. ¶ 21.  "From the outset of his tenure, [he] was subjected to a hostile work environment, characterized by persistent monitoring, targeted humiliation by colleagues, and a systemic failure by [CJP] and the Judicial Council of California to address repeated requests for assistance and accommodation."  Compl. ¶ 21.

In September 2015, Mr. Mallery "suffered a medical emergency, [consisting of] elevated blood pressure, chest pain, and related systems" because of the hostile work environment.  *See* Compl. ¶ 22.  At this time, his mental condition also began to deteriorate.  He was later diagnosed with post-traumatic stress disorder, complex PTSD, major depressive disorder, and generalized anxiety with panic attacks.  *See* Compl. ¶ 22.

Several years later, in September 2020, the CJP initiated a preliminary disciplinary investigation against Mr. Mallery, which further aggravated his mental impairments.  *See* Compl. ¶ 23.  By March 2022, Mr. Mallery was placed on medical leave, "with treating professionals attesting to the permanence and severity of his disabilities, which rendered him unable to perform the essential functions of his judicial office."  Compl. ¶ 23.

In May 2022, Mr. Mallery applied for disability retirement benefits.  *See* Compl. ¶ 24.  The CJP improperly assigned the same individual to oversee both the disciplinary and disability retirement proceedings.  *See* Compl. ¶ 25.

Although the applicable guidelines contemplated that a disability retirement application would be processed in 4-6 months, Mr. Mallery's application was delayed for 18 months.  *See* Compl. ¶¶ 28-29.  The initial tentative denial did not issue until November 2023.  *See* Compl. ¶ 30.  The decision stated that Mr. Mallery had failed to provide clear and convincing evidence of disability,[1] disregarding the medical evidence that Mr. Mallery has provided from multiple

---

[1] The clear and convincing standard applied (and not preponderance of the evidence) because Mr. Mallery had a disciplinary proceeding pending against him.  *See* Compl., Ex. 4 (Spc. Master's Rpt.

2

providers. Furthermore, according to the complaint, the CJP did not provide any contrary medical evidence. *See* Compl. ¶ 30.

The CJP's policies allowed Mr. Mallery to ask to supplement the record, and he did so in December 2023, providing additional medical evidence. *See* Compl. ¶ 30. In February 2024, the CJP denied in part his request to submit additional evidence and issued a second tentative denial. *See* Compl. ¶ 31. On the same day, the CJP amended its rules to restrict remote testimony in disability hearings. *See* Compl. ¶ 31.

In March 2024, Mr. Mallery submitted a detailed response to the second tentative denial and asked to submit additional information. *See* Compl. ¶ 32. Several weeks later, the CJP denied his response and request to submit additional information but did grant an evidentiary hearing before a special master. *See* Compl. ¶ 33. In April 2024, in advance of the hearing, Mr. Mallery provided a 128-page statement supported by medical evidence. *See* Compl. ¶ 33.

The evidentiary hearing was held before the special master in July 2024. Because the CJP had amended its rules on remote testimony, it was too costly for Mr. Mallery to have live witnesses testify, and the matter was ultimately submitted on the written record. *See* Compl. ¶ 34.

In August 2024, the special master issued a ruling in Mr. Mallery's favor, recommending that his application for disability benefits be approved. *See* Compl. ¶ 35 & Ex. 4 (special master's report). Nevertheless, in October 2024, the CJP issued a final denial on the application. *See* Compl. ¶ 36; *see also* Powe Decl., Ex. A (CJP's decision) (ECF Pages 61-64). The CJP explained its decision as follows:

> Judge Mallery presented no new evidence to the special master that the commission did not previously consider before issuing both tentative denials of the disability application. Judge Mallery's failure to present any new evidence at the hearing before the special master mooted the need for a special master. No new evidence was admitted upon which the special master could base proposed findings of fact and conclusions of law and, accordingly, there was

at 17); *see also* Cal. Gov't Code § 75563 (providing, *inter alia*, that "[a] judge against whom there is pending a disciplinary proceeding that could lead to his or her removal from office . . . prior to the approval of his or her application for disability retirement: (a) Shall be presumed not to be disabled and this presumption is a presumption affecting the burden of proof [and] (b) Shall, in a disability retirement proceeding before the commission, be subject to the standard of proof of clear and convincing evidence sufficient to sustain a claim to a reasonable certainty.").

United States District Court
Northern District of California

> no evidentiary basis for the special master to recommend that the
> commission alter its previous findings and conclusions.

Powe Decl., Ex. A (ECF Page 63).  The CJP essentially rejected the special master's conclusion that he was still obligated to conduct a review – albeit a deferential one – even though no additional evidence had been presented to him.  *See* Compl., Ex. 4 (Spc. Master's Rpt. at 1-2).  According to the CJP, it had made certain amendments to a Policy Declaration in 2016 that

> clarif[ied] the role of the special master and the process of taking
> additional evidence in disability applications[.]  [T]he commission
> added the language to Policy Declaration 5.4(1) that "[t]he
> proceedings before the special master are not a de novo review of
> the basis for the commission's tentative denial of the disability
> application . . . ."  The added language specifically precludes the
> utilization of the evidentiary hearing as an appeal, judicial review, or
> a reconsideration of the commission's tentative findings and
> conclusions.  The commission further notes that allowing a single
> jurist – sitting as a special master – to reevaluate the tentative
> findings and conclusions of the 11-member commission without
> taking additional evidence would be at odds with the intent of the
> 1994 amendments to the California Constitution which established a
> majority of public members on the commission.

Powe Decl., Ex. A (ECF Page 64).

Subsequently, in November 2024, the CJP refused to provide Mr. Mallery with statistical information on its handling of previous disability retirement applications.  *See* Compl. ¶ 39.  Then, in January 2025, the CJP failed to provide the administrative record requested by Mr. Mallery.  *See* Compl. ¶ 38.  Mr. Mallery asserts, in his opposition brief, that this affected his ability to pursue relief with the California Supreme Court.  *See* Part I.B, *infra*.

Based on the above, Mr. Mallery has asserted the following claims for relief.

- Violation of the ADA (Title II).  *See* 42 U.S.C. § 12132 ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").  Mr. Mallery was qualified to receive disability retirement benefits, but CJP improperly denied him benefits.  *See* Compl. ¶¶ 46-47.  CJP denied him benefits solely because of his disability and engagement in protected

4

activity.[2]  *See* Compl. ¶ 48; *see also* Compl. ¶ 68 (alleging that protected activity included applying for benefits, asking to supplement the record, and asking for timely and impartial adjudication).

- Retaliation in violation of the ADA.  *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.").  CJP retaliated against Mr. Mallery for engaging in protected activity.  *See* Compl. ¶ 49; *see also* Compl. ¶ 162 (alleging that protected activity included submitting a disability retirement benefits application, asking for leave to supplement the record, and seeking a timely and fair adjudication); Compl. ¶ 69 (alleging that adverse actions included unjustified delay in adjudicating, restricting remote testimony, denying supplementation of the record, and rejecting the special master's findings).

- Interference in violation of the ADA.  *See* 42 U.S.C. § 12203(b) ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.").  CJP impeded Mr. Mallery's ability to pursue and enjoy ADA protections.  *See* Compl. ¶ 50.

- Violation of the Due Process Clause.[3]  The CJP violated both procedural and

---

[2] Mr. Mallery's ADA claim is confusing, at least in part.  Mr. Mallery seems to suggest that he was denied disability benefits because he was disabled.  However, the denial on its face was based on a finding of no disability.

[3] It is not clear from the face of the complaint whether Mr. Mallery is actually asserting a claim for violation of due process and a claim for violation of equal protection.  Parts of his complaint suggest such; however, in the section of the complaint where causes of action are enumerated, he does not mention either a due process or equal protection violation.  For purposes of this order, the Court assumes Mr. Mallery is bringing due process and equal protection claims.

5

substantive due process by, *inter alia*, assigning the same individual to oversee the disciplinary and disability retirement proceedings, taking more than 18 months to issue its first decision on his application for disability retirement, denying him the opportunity to supplement the record, restricting remote testimony, and arbitrarily ruling against him. *See* Compl. ¶¶ 53, 55.

- Violation of the Equal Protection Clause. The CJP singled Mr. Mallery out "for disparate, adverse treatment not visited upon any other applicant for disability retirement benefits since at least 2007." Compl. ¶ 64.

The relief that Mr. Mallery seeks includes: (1) an order compelling CJP to approve his application for disability retirement benefits, (2) injunctive relief, and (3) compensatory damages. *See, e.g.*, Compl. ¶ 171 (seeking an order compelling the CJP "to immediately approve and grant Plaintiff's application for disability retirement benefits . . . , retroactive to the date of initial eligibility and forward the application on to the California Chief Justice pursuant to California Government Code § 75560.1"[4]).

B.     Proceedings Before the California Supreme Court

After the CJP denied Mr. Mallery relief (but before he sought relief from this Court), Mr. Mallery filed a petition for review with the California Supreme Court. *See* Powe Decl., Ex. A (ECF Pages 4-58). In January 2025, the California Supreme Court dismissed the petition due to lack of jurisdiction but indicated that, if he wanted to proceed, Mr. Mallery could file a petition for a writ of mandate. *See* Powe Decl., Ex. B (ECF Page 102).

In March 2025, Mr. Mallery filed his petition for a writ of mandate with the California Supreme Court. *See* Powe Decl., Ex. C (ECF Pages 103-62). In April 2025, the California Supreme Court denied the petition in an one-line order. *See* Powe Decl., Ex. D (ECF Page 167).

///

///

///

---

[4] Section 75560.1 is related to retirement of a judge based on a disability.

## II.    DISCUSSION

A.    Legal Standard

As noted above, the CJP has moved to dismiss on the basis of *Rooker-Feldman*, res judicata/collateral estoppel, and Eleventh Amendment immunity.

To the extent the CJP moves to dismiss based on the *Rooker-Feldman* doctrine, it is challenging subject matter jurisdiction, and therefore the governing rule is Federal Rule of Civil Procedure 12(b)(1). *See Miroth v. Cnty. of Trinity*, 136 F.4th 1141, 1146 (9th Cir. 2025) (stating that, under *Rooker-Feldman*, "[a]n appeal of a state court judgment filed in federal district court – essentially an appeal filed in the wrong court – is a 'forbidden de facto appeal' over which a district court lacks subject matter jurisdiction"). A Rule 12(b)(1) motion may be facial or factual in nature. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Although the CJP takes the position that it is bringing a factual challenge, "[c]onsidering documents subject to judicial notice is not inconsistent with a facial challenge on subject matter jurisdiction." *Chaudry v. Cnty. of San Diego*, No. 21cv1847-GPC(AHG), 2022 U.S. Dist. LEXIS 224761, at *6 (S.D. Cal. Dec. 13, 2022).

To the extent the CJP moves to dismiss based on res judicata/collateral estoppel, which is an affirmative defense, it is bringing a 12(b)(6) motion. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (noting that, typically, an affirmative defense such as res judicata may not be raised in a Rule 12(b)(6) motion, "but this is not true when . . . the defense raises no disputed issues of fact"); *see also Devins v. Armstrong*, No. 25-50713, 2025 U.S. App. LEXIS 32721, at *4 (5th Cir. Dec. 15, 2025) (stating that, "[g]enerally, dismissal under Rule 12(b)(6) based on res judicata [which is an affirmative defense] 'is appropriate if the res judicata bar is apparent from the complaint and judicially noticed facts'"); *Meyers v. Textron, Inc.*, 540 Fed. Appx. 408, 410 (5th Cir. 2013) (noting that, "while res judicata is generally an affirmative defense to be pleaded in a defendant's answer, there are times when it may be raised on a Rule 12(b)(6) motion"; for

7

example, "res judicata may be properly raised on a motion to dismiss when 'the facts are admitted or not controverted or are conclusively established'"); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (stating that, "[g]enerally res judicata is an affirmative defense to be pleaded in the defendant's answer[,] [but], when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer").

Likewise, to the extent the CJP is asserting Eleventh Amendment immunity, it is also bringing a Rule 12(b)(6) motion. *See Right Angle Ventures LLC v. California ex rel. CA DOT*, 2024 U.S. Dist. LEXIS 149986, at *2 (C.D. Cal. Aug. 21, 2024) (stating that "'dismissal based on Eleventh Amendment immunity . . . rests on an affirmative defense'" and that "'dismissal based on Eleventh Amendment immunity should be analyzed under Rule 12(b)(6)'").

B.    Res Judicata

Although the CJP's *Rooker-Feldman* argument raises the issue of subject matter jurisdiction, the Court may address the res judicata/collateral estoppel argument first if it is case dispositive.  For purposes of this decision, the Court need only address res judicata.

Res judicata is a preclusion doctrine.  The CJP contends that Mr. Mallery's suit is barred by res judicata (also known as claim preclusion) because he previously filed a petition for a writ of mandate with the California Supreme Court based on the same underlying facts, and the California Supreme Court denied his petition for relief.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Holcombe v. Hosner*, 477 F.3d 1094, 1097 (9th Cir. 2007) (same).  Under California law,

> "[r]es judicata precludes the relitigation of a cause of action only if (1) the decision in the prior proceeding is final and on the merits; (2) the present action is on the same cause of action as the prior proceeding; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding."  Res judicata bars the litigation not only of issues that were actually litigated in the prior proceeding, but also issues that could have been litigated in that proceeding.

*Franceschi v. Franchise Tax Bd.*, 1 Cal. App. 5th 247, 257 (2016) (emphasis omitted).

In the case at bar, Mr. Mallery does not challenge elements (2) or (3) above – *i.e.*, he effectively concedes that the parties to the litigation before the California Supreme Court were the same as the parties here, and he does not dispute that the claims he has brought to this Court are the same as those that were litigated or that he could have litigated with the California Supreme Court. Rather, Mr. Mallery's sole contention is that res judicata does not apply because the California Supreme Court's decision denying his petition for a writ of mandate was not a final judgment on the merits.

Mr. Mallery maintains that the California Supreme Court decision was not a substantive decision on the merits but rather was based on procedural grounds only. The decision was a one-line summary denial. *See* Powe Decl., Ex. D ("The petition for writ of mandate is denied."). On its face, the decision says nothing about whether the denial was made on procedural or substantive grounds. But Mr. Mallery maintains that the decision must have been based on procedural grounds for at least two reasons: (1) the California Supreme Court issued its decision even though no administrative record was provided (*i.e.*, without the administrative record, the California Supreme Court could not issue a substantive decision); and (2) in opposing the petition for writ of mandate, the CJP made procedural arguments only. *See generally* Griffith Decl., Ex. 6 (CJP's opposition to Mr. Mallery's petition for writ of mandate) (arguing that Mr. Mallery's petition is procedurally defective, that the CJP gave Mr. Mallery due process, etc.).

Mr. Mallery's position is problematic. As a preliminary matter, it is worth noting that Mr. Mallery has not provided a full picture of the relevant background. Most notably, even though the CJP opposed Mr. Mallery's petition for writ of mandate largely on procedural grounds, Mr. Mallery – in his briefs filed with the California Supreme Court – still addressed the merits of the CJP's decision. *See* Powe Decl., Ex. C (Pet. at 48) ("Petitioner has establishe[d] his entitlement to disability retirement, as the evidence amply shows Petitioner has (1) a mental disability; (2) that is or is likely to become permanent; and (3) that prevents Petitioner from efficiently discharging the duties of his office."); Griffith Decl., Ex. 7 (Reply at 9-10) ("While the Commission addresses numerous perceived procedural errors and claims that Petitioner has caused delay and

United States District Court
Northern District of California

misunderstanding of the proceedings, the Commission fails to address the main issue, that the Commission has abused their authority by denying Petitioner JRS-II disability retirement benefits while providing no medical evidence disputing the overwhelming evidence supporting Petitioner's Application that Petitioner (1) has a mental disability; (2) that is or is likely to become permanent; and (3) that prevents Petitioner from efficiently discharging the duties of the judge's office. It is clear that the Commission has no medical evidence to support their decision, and the Preliminary Opposition further confirms this fact.").

Furthermore, even though Mr. Mallery took the position that it was the CJP's responsibility to give to him a copy of the administrative record, he nonetheless provided the California Supreme Court with documents to review. See Griffith Decl., Ex. 7 (Reply at 12) ("On January 28, 2025, Petitioner served the Commission with a Request for Administrative Record. To date, the Commission has not provided Petitioner with the administrative record so that it may be filed with this Court. In the meantime, Petitioner is filing additional exhibits with this Reply to further supplement the record filed with the Petition. Petitioner has already provided a significant part of the record and will continue to do so even if the Commission still fails to respond to Petitioner's Request for Administrative Record.") (emphasis added). Hence, there was a basis for the California Supreme Court to rule on the merits of the petition.

In any event, Mr. Mallery's position is flawed for a more fundamental reason. Mr. Mallery is correct that, in *Kowis v. Howard*, 3 Cal. 4th 888 (1992), the California Supreme Court stated as follows:

> "The rule is well settled that a denial by this or the appellate court of an application for a writ without opinion 'is not res judicata of the legal issues presented by the application unless the sole possible ground of the denial was that the court acted on the merits, or unless it affirmatively appears that such denial was intended to be on the merits.'"

*Kowis v. Howard*, 3 Cal. 4th 888, 895-896 (1992) (emphasis omitted). In other words, a summary denial of a petition for a writ of mandate is not considered a decision on the merits absent the circumstances described.

But, in a subsequent decision, *In re Rose*, 22 Cal. 4th 430 (2000), the California Supreme

United States District Court
Northern District of California

Court refined this rule.  In *Rose*, the California Supreme Court addressed the summary denial of an attorney's petition for review of a State Bar Court decision recommending disbarment or suspension.  It held that a summary denial in this situation *is* a final decision on the merits, *see id.* at 443, because a petition for a writ of review with the California Supreme Court "is the exclusive means of obtaining review of a quasi-judicial decision." *Id.* at 444.  The court explained as follows:

> In *Napa Valley Co. v. R. R. Comm.* (1920) 251 U.S. 366, the high court concluded that our summary denial of a petition for review of a decision by the Railroad Commission (now known as the Public Utilities Commission, or PUC) was an adjudication on the merits for purposes of res judicata.  The PUC is a nonjudicial agency empowered to conduct hearings and render decisions regarding matters such as utility rates.  The Legislature is authorized to establish the manner and scope of review of PUC decisions, and until recently the sole means of review was a petition for writ of review in this court.
>
> We have summarized the *Napa Valley* decision as follows: "It was contended that since no writ of review had issued, the court 'instead of hearing, refused to hear, instead of adjudicating, refused to adjudicate, and that from this negation of action or decision there cannot be an assertion of action or decision with the estopping force of res judicata . . . .' The opinion rejected this contention and held that the order of denial was the exercise of the judicial power of the court.  By this decision, the United States Supreme Court affirmed the judgment of the District Court [citation], wherein that court said: [¶] '. . . We are bound to assume . . . that the petition put that court in full and complete possession of all the facts upon which [the plaintiff] relies here . . . ; and that being true, the denial of the petition was necessarily a final judicial determination . . . [that] is as effectual as an estoppel as would have been a formal judgment upon issues of fact. . . . Nor is it material that the reasons [given] for the conclusion reached by the court are not given.'" The *Napa Valley* decision further stated: "[T]he absence of an opinion by the Supreme Court did not affect the quality of its decision or detract from its efficacy as a judgment upon the questions presented . . . ." In *Geibel v. State Bar*, *supra*, 14 Cal. 2d 144, we considered the effect of our denial of an attorney's petition to set aside our earlier final decision suspending him from the practice of law.  After we had summarily denied that petition by minute order, the attorney filed a motion seeking to set aside the decision on the same grounds asserted in the earlier petition.  Relying upon *Napa Valley*, we held that the order denying the petition was res judicata, even though no written opinion had been filed.  In a subsequent decision, we explained the rationale of the *Napa Valley* and *Geibel* decisions: "[In *Napa Valley*,] the application was for review of an order of the Railroad Commission, over whose orders this court has **exclusive power** of review [citations] . . . [citations] . . . . [I]t was held that this court's denial without written opinion of an application to review an order

of the Railroad Commission constituted a determination on the merits of the questions presented by the application. In G*eibel v. State Bar*[, *supra*,] 14 Cal. 2d 144 . . . , this court's denial without written opinion of a petition to set aside a previous decision rendered by it was held to render res judicata the issues on a subsequent motion, made on the same grounds as the earlier petition, to vacate and set aside the same decision. There, again, however, this court was the **sole tribunal** available in the premises, and our denial of the earlier petition necessarily included a determination of the merits thereof." **We observed that the effect of our denial of a petition for writ of review in such circumstances is distinct from the consequences of a summary denial of a petition for writ of mandate or prohibition. An order summarily denying a petition for writ of mandate or prohibition generally reflects a discretionary refusal to exercise original jurisdiction over a matter that properly may be pursued in the lower courts. When the sole means of review is a petition in this court, however, our denial of the petition – with or without an opinion – reflects a judicial determination on the merits.** Our more recent decisions adhere to this reasoning. Thus, in *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal. 3d 891, we stated: "The sole means provided by law for judicial review of a [PUC] decision is a petition to this court for writ of review [citation], which thereby serves in effect the office of an appeal. **If our ruling on such a petition were not a final 'decision on the merits both as to the law and the facts presented,' the parties would be denied their right to such review.**" We further explained: "This reasoning distinguishes the cases involving the prerogative writs such as prohibition and mandate. **Because the law does provide other means of judicial review in such cases**, appellate courts have discretion to summarily deny petitions for those writs on policy grounds unrelated to their procedural or substantive merits."

*Id.* at 444-46 (emphasis added).

In light of *Rose*, the critical question in the instant case is whether a proceeding before the California Supreme Court is the sole means of review with respect to a decision by the CJP on disability retirement benefits. If so, then under *Rose*, a summary denial by the California Supreme Court is deemed a denial on the merits.

The Court asked the parties to provide supplemental briefing on this issue, taking note that there were case authorities indicating that a challenge to a CJP decision regarding benefits was filed in a state trial court, *i.e.*, not the California Supreme Court. *See, e.g.*, *Willens v. Comm'n on Jud. Qualifications*, 10 Cal. 3d 451, 454-55 (1973); *Davis v. Comm'n on Jud. Qualifications*, 73 Cal. App. 3d 818, 820-21 (1977); *Geiler v. Comm'n on Jud. Performance*, 151 Cal. App. 3d 365, 366 (1984). However, as *both* parties explained to the Court, those authorities predate a 1994

12

amendment to the California Constitution.  Proposition 190 amended the California Constitution to state: "No court, except the Supreme Court, shall have jurisdiction in a civil action or other legal proceeding of any sort brought against the commission [*i.e.*, the CJP] by a judge."  Cal. Const., art. VI, § 18(g).

Section 18(g) unequivocally establishes that the California Supreme Court has exclusive jurisdiction over a challenge to a CJP decision denying benefits.  *Rose*, therefore, dictates that the California Supreme Court's one-line summary denial of Mr. Mallery's petition must be construed as a decision on the merits.

In his supplemental brief, Mr. Mallery tries to argue otherwise, but his arguments are not persuasive.  For example, he notes that § 18(g) provides that "[a]ny request for injunctive relief or other provisional remedy shall be granted or denied within 90 days of the filing of the request for relief."  *Id.*  According to Mr. Mallery, the 90-day provision reflects an "expectation of speed" that is "fundamentally incompatible with . . . a silent merits adjudication."  Docket No. 24 (Pl.'s Supp. Br. at 3) (also arguing that the procedure provided for in § 18(g) is a "'less rigorous' one "intended to screen cases, not to provide a full-blown appeal on the merits").  But nothing in *Rose* suggests that the time period upon which an appellate court is required to act factors into the analysis of whether or not a decision is one on the merits.

To the extent Mr. Mallery argues that the California Supreme Court could not have conducted a merits review because no administrative record was available for it to review, he fares no better.  Mr. Mallery explicitly called out for the California Supreme Court his position that the CJP was required to provide the administrative record (a matter that the CJP disputed) and that the CJP had failed to provide him with a copy of the record.  Mr. Mallery further supplied some of that record – in his words, a "significant part," Griffith Decl., Ex. 7 (Reply at 12) – to support his arguments on the merits.  Nevertheless, the California Supreme Court still denied Mr. Mallery relief.  For this Court to accept Mr. Mallery's proposition that the California Supreme Court must have denied him relief solely on procedural grounds would be directly contrary to the reasoning in *Rose* – *i.e.*, where the California Supreme Court has exclusive jurisdiction and denies relief, it must have decided the case on the merits; otherwise, there would be no other state court to whom

13

the petitioner could turn for a merits decision.  *See Rose*, 22 Cal. 4th at 446 (stating that, "'[i]f our ruling on such a petition were not a final decision on the merits both as to the law and the facts presented, the parties would be denied their right to such review'").  The fact that the California Supreme Court decision denying the petition would have a preclusive effect before a federal court does not change the rule in *Rose*; it is immaterial to that rule.  As this Court has noted in a different case, there is no guarantee of a federal forum.  *See Diviacchi v. Stallings*, No. 24-cv-07827-EMC, 2025 U.S. Dist. LEXIS 39960, at \*17-18 (N.D. Cal. Mar. 5, 2025) (stating that "there is 'no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all'").

The Court has considered the arguments made by Mr. Mallery in his sur-reply,[5] but they do not alter this Court's analysis.  For example, Mr. Mallery's reliance on *Harrington v. Richter*, 562 U.S. 86 (2011), is entirely off point.  *Harrington* concerns a specific statutory scheme: 28 U.S.C. § 2254, the provision in AEDPA that governs habeas relief sought from a state court decision.  *See id.* at 99 ("There is no merit either in Richter's argument that § 2254(d) is inapplicable because the California Supreme Court did not say it was adjudicating his claim 'on the merits.'  The state court did not say it was denying the claim for any other reason.  When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  The instant case is not a habeas case.  The governing law is *Rose*.

The Court, therefore, grants the CJP's motion to dismiss based on res judicata.  Claim preclusion bars Mr. Mallery's suit herein.  Because the Court concludes that res judicata is a bar, it need not address the CJP's other arguments based on *Rooker-Feldman* and Eleventh Amendment immunity, with one exception.

Specifically, the Court holds that the CJP does have Eleventh Amendment immunity with

---

[5] The Court grants Mr. Mallery's request for leave to file a sur-reply even though there was nothing new in the CJP's reply that warranted a sur-reply and even though Mr. Mallery could have made the arguments in his sur-reply in his opposition brief.

respect to the § 1983 claims.  Mr. Mallery invokes *Ex parte Young*, but there are two problems with his reliance on that case.  First, *Ex parte Young* permits suit against individual state officers, not against the state or arm of the state.  Here, Mr. Mallery has sued only the CJP, *i.e.*, the arm of the state.  *See Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 598-99 (6th Cir. 2016) (noting that "the *Ex parte Young* doctrine is applicable to permit suit against the individual state officers pursuant to 42 U.S.C. § 1983," but "the Eleventh Amendment bars this suit against the Commonwealth itself," which is "a state for purposes of sovereign immunity").

Second, *Ex parte Young* allows a plaintiff to seek injunctive relief.  *See California ex rel. Bonta v. Del. Rosa*, No. 24-698, 2025 U.S. App. LEXIS 29389, at *18 (9th Cir. Nov. 7, 2025) (noting that, "[i]n *Ex parte Young*, . . . the Supreme Court 'established an important limit on the sovereign-immunity principle' 'for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities'").  But that is only when the injunctive relief sought is prospective, not retrospective in nature.  *See R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1221 (9th Cir. 2023) (stating that, "[f]or a suit to proceed under *Ex parte Young*, the plaintiff must allege . . . an ongoing violation of federal law for which she seeks prospective injunctive relief").  Here, the main injunctive relief sought by Mr. Mallery is "[a]n order compelling [the CJP] to immediately approve and grant [his] application for disability retirement benefits . . . retroactive to the date of initial eligibility."  Compl., Prayer for Relief ¶ 1.  This relief is retrospective in nature, not prospective.[6]

According to Mr. Mallery, he is seeking prospective injunctive relief because every day the CJP continues to violate his rights by not giving him benefits.  *See* Sur-Reply at 13 (referring to the CJP's "daily refusal to correct its procedurally and substantively deficient determination" –

---

[6] Mr. Mallery's complaint does seek some injunctive relief that is prospective in nature.  *See* Compl., Prayer for Relief ¶¶ 2, 5 (asking the Court to enjoin the CJP "from further discriminatory, retaliatory, or procedurally deficient conduct in the administration of disability retirement applications" and to require "compliance with all applicable federal and state laws"; further asking for "[s]ystemic reforms and monitoring to ensure lasting compliance with constitutional and statutory mandates, including transparent procedures, mandatory training, and periodic reporting to the Court").  But Mr. Mallery has not shown that he has standing to pursue such relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("Lyons' standing to seek the injunction requested [*i.e.*, a bar on the use of control holds] depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers.").

United States District Court
Northern District of California

*i.e.*, a "continuing violation"). But Mr. Mallery's position runs contrary to *Doe v. Lawrence Livermore National Laboratory*, 131 F.3d 836 (9th Cir. 1997). There, the Ninth Circuit held that reinstatement is prospective injunctive relief for purposes of *Ex parte Young* but indicated that compensation (including for past benefits) is not. It took note, *e.g.*, of a prior Supreme Court case, *Papasan v. Allain*, 478 U.S. 265 (1986), which

> involved claims by school officials and schoolchildren in several Mississippi counties who were being unlawfully denied the economic benefits of public school lands granted by the United States to the State of Mississippi. According to the petitioners, the federal grants created a perpetual trust, with the State as trustee, for the benefit of public schools. As trustee, the State had an obligation to pay appropriate income indefinitely. Therefore, petitioners sought, among other things, an award of past income not received. By characterizing the continued withholding of accrued benefits as an ongoing "breach of a continuing obligation," petitioners argued that the relief sought after was a prospective injunctive remedy.

> However, the Court in *Papasan* rejected petitioners' characterization. It likened the case to the situation in *Edelman v. Jordan*, 415 U.S. 651. In *Edelman*, the Supreme Court held that the Eleventh Amendment did not bar an injunction requiring the state to comply with federal standards for processing welfare applications in the future; however, the Court refused to allow an injunction ordering the state to pay back all the funds which had been improperly withheld.

> Relying on *Edelman*, the Court in *Papasan* held that there was "no substantive difference between a not-yet-extinguished liability for a past breach of trust and the continuing obligation to meet trust responsibilities asserted by petitioners." Since the suit amounted to liability for the past breach of trust, petitioners' trust claim was barred by the Eleventh Amendment.

> [Here,] Doe's case is analytically distinct from *Papasan* and *Edelman*. Doe is not attempting to recover lost wages or other accrued benefits by arguing that their continued withholding is an ongoing violation. Doe simply seeks job reinstatement hereafter, without any compensation for alleged prior violations of his rights.

*Doe v. Lawrence Livermore*, 131 F.3d at 839-40; *see also Sanders v. Kan. Dep't of Soc. & Rehab. Servs.*, 317 F. Supp. 2d 1233, 1244 (D. Kan. 2004) ("Although the effects of defendants' acts as they impact the plaintiff may be continuing, a continuing effect of a past violation is not sufficient to warrant prospective injunctive relief."). Unlike the plaintiff in *Doe v. Lawrence Livermore*, Mr. Mallery here is seeking compensation for alleged prior violations of his rights. A suit seeking to end the withholding of benefits owed is retrospective. Therefore, the relief he seeks is not

16

prospective, and *Ex parte Young* does not apply.

### III. CONCLUSION

For the foregoing reasons, the Court grants the CJP's motion to dismiss based on res judicata. Also, at the very least, the CJP has Eleventh Amendment immunity with respect to the § 1983 claims. Because further amendment would be futile, the dismissal of Mr. Mallery's case is with prejudice.

The Court instructs the Clerk of the Court to enter a final judgment in accordance with the above and close the file in the case.

This order disposes of Docket No. 12.

**IT IS SO ORDERED**.

Dated: February 11, 2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

17